**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRITTANY SANCHEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-07367** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "B" (4)** |

## REPORT AND RECOMMENDATION

This is an action brought pursuant to **Title 42 U.S.C. § 405(g)** for judicial review of a final decision of the Commissioner of Social Security Administration ("SSA"), denying Brittany Sanchez's ("Sanchez") claim for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

## I.    Factual Summary and Procedural History

At the time of the disability hearing, Sanchez was a 25-year old female with an eighth-grade education. R. Doc. 9-3, Tr. 90 & 104. She has been diagnosed with anxiety, depression, bipolar, thrombocytopenic. *Id.* Sanchez claims that her disability began on February 24, 2015. R. Doc. 19-3, Tr. 94. Sanchez filed an application for Supplemental Security Income Benefits on April 7, 2015 (R. Doc. 9-2, Tr. 16-26), which was subsequently denied on August 31, 2015. *Id.*

Sanchez requested a hearing before the Administrative Law Judge ("ALJ"), which took place on March 22, 2017. R. Doc. 9-2, Tr. 16. The ALJ found that Sanchez had not been engaged in substantial gainful activity since the onset date and that she met the insured status requirements of the Social Security Act through April 7, 2015. R. Doc. 9-2, Tr. 18. The ALJ further found Sanchez suffered severe impairments of major depressive disorder and borderline intellectual function. *Id.* The ALJ found that since the alleged onset date, Sanchez does not have an impairment

or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. Doc. 9-2, Tr. 19.

The ALJ held that, after careful consideration of the entire record, Sanchez has the residual functional capacity to perform a full range of work at all exertional levels subject to the following non-exertional limitations—the claimant is limited to simple routine, repetitive concept tasks. R. Doc. 9-2, Tr. 22 (Finding 4). The ALJ further held that Sanchez can have only superficial interaction with supervisors, co-workers, and the public, meaning no ongoing public interaction or close coordination with co-workers. *Id*. The ALJ found that Sanchez has no past relevant work performed within the last fifteen years. R. Doc. 9-2, Tr. 25 (Finding 5).

The ALJ further found that Sanchez was twenty-five (25) years old and born on January 10, 1990, a younger individual with a limited education, and able to communicate in English. R. Doc. 9-2, Tr. 22 (Finding 5-6). The ALJ further held that the transferability of jobs skills is not material to the determination of disability because he used the Medical-Vocational Rules which supports a finding of "not disabled" whether she has transferable job skills. *Id.* The ALJ, therefore, held that given Sanchez's age, education, work experience and residual functional capacity that there are jobs that exist in significant number sin the national economy that Sanchez can perform. R. Doc. 9-2, Tr. 25 (Finding 9). The ALJ finally held that Sanchez has not been under disability since April 7, 2015, the date the application was filed. R. Doc. 9-2, Tr. 26 (Finding 10).

On August 3, 2018, Sanchez filed a complaint in the United States District Court contending that the ALJ's decision is not based upon substantial evidence and applied erroneous law. R. Doc. 1. The Commissioner contends that there was substantial evidence (1) to support the

Commissioner's denial of Sanchez's request to reopen her previous application and (2) to support the ALJ's determination that Sanchez did not meet listing level 12.05.

**II.**    **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a constructive period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at Step Five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## III.    Analysis

### A.    Reopening of Previous Application

Sanchez has applied for disability insurance benefits and/or supplemental security income on three occasions. Sanchez contends that the ALJ erred when the ALJ found that she should not be able to reopen the 2010 application in the matter before it. R. Doc. 10. Sanchez contends that during the second hearing before Judge Pizzo that Sanchez's Psychological Evaluation was not included as a part of the record, and the fact that she made the request to reopen the 2015 decision,

constitutes error on its face where the psychological evaluation should have been considered new and material evidence for the third hearing, and not the second hearing, which would negate the decision of the ALJ to apply *res judicata* bar. R. Doc. 10, p.3-4.

The Commissioner contends that the ALJ properly declined to reopen the November 2013 application, which was denied in February 2015. R. Doc.14, p. 2. The Commissioner contends that despite Sanchez's claim, Dr. Bergeron's evaluation was considered by ALJ Philip McLeod over seven years ago and therefore it cannot constitute new evidence. R. Doc. 14, p. 4.

When a final decision is made with respect to a Social Security claim, the doctrine of *res judicata*, ordinarily, bars the claimant from filing a later application reasserting the same claim. 20 C.F.R. § 404.957(c)(1). However, the Commissioner has discretion to reopen the previous claim for any reason within twelve (12) months of the date of notice of the initial determination; or, with good cause within four (4) years of the initial determination. 20 C.F.R. § 404.988(a)-(b).

The Commissioner's determination that a claim is barred on *res judicata* grounds is subject to review by the District Court, but the District Court lacks jurisdiction to review the denial of a request to reopen a previously decided case because such a denial is not a "final decision" within the meaning of 42 U.S.C. § 405. *Califano v. Sanders*, 430 U.S. 99, 107–108 (1977). *See also Coates v. Bowen*, 875 F.2d 97, 100 (7th Cir.1989) (prohibition against judicial review applies even when abuse of discretion is alleged). If a case is reopened, the Commissioner's decision is reviewable to the same extent as if it were a new claim. *Malave v. Sullivan*, 777 F.Supp. 247, 252 (S.D.N.Y.1991).

There are two ways in which a case may be reopened. The ALJ may make an express determination pursuant to 20 C.F.R. § 404.988 that the case should be reopened or the ALJ may

5

"constructively" reopen the case by reconsidering the prior claim on its merits. *Robertson v. Sullivan*, 979 F.2d 623, 625 (8th Cir.1992); *Cleaton v. Secretary, Department of Health & Human Services*, 815 F.2d 295, 298 (4th Cir.1987); *McGowen v. Harris*, 666 F.2d 60, 65–66 (4th Cir.1981); *Taylor for Peck v. Heckler*, 738 F.2d 1112, 1114–15 (10th Cir.1984).

The record indicates that on the eve of the administrative hearing Sanchez's counsel faxed a letter to ALJ Henderson which he had not received in advance of the hearing. See R. Doc. 9-2, p. 41, Tr. 40 (Trial Transcript). As a result, counsel for Sanchez raised the issue regarding opening the 2015 decision and indicated that it should be reopened because there is new and material evidence. The ALJ indicated that Exhibit 2, the intellectual evaluation, was not new; has been on the record; and was available to the court during the second ALJ decision. While the Judge agreed that the information was material, he found that it was not new. The ALJ concluded that there was no title II Application in 2015, that the findings in the report were considered, and went on to deny the request to reopen on the record. As indicated earlier, this Court lacks jurisdiction to review the denial of a request to reopen.   As a result, the request to review the decision to reopen is denied.

Further, there was no missing evidence as alleged by Sanchez. The report in question was in the administrative record. R. Doc. 9-7. Additionally, it was reviewed and consider by ALJ Anderson in the opinion in this case. The Court finds that the 2015 is a final decision not subject to review and more than four (4) years have expired since the opinion that Sanchez complains about. 20 C.F.R. § 404.988(a)-(b).

**B.    Assessment of Impairments**

Sanchez contends that she met the definition of disabled because she had additional and significant other impairments of Thrombocytopenia and Major Depression, as well as Bipolar and

Anxiety Disorder. Sanchez contends that if any of these impairments have more than a slight or minimal effect on work that would be sufficient to satisfy 12.05C, referring back to the 2011 opinion as final. As such, Sanchez contends that both the Major Depression and Anxiety Disorder were "severe impairments".

The Commissioner explains that the essence of Sanchez's argument is that she should be found disabled under Listing 12.05 if Dr. Bergeron's I.Q. finding of 70 is considered. However, the Commissioner further contends that showing an I.Q. of 70 does not, and will not, show that Listing 12.05 was met. The Commissioner contends that despite the fact that Sanchez's 2010 testing showed an I.Q. of 70, the ALJ properly found that Listing 12.05 was not met in this case. Listing 12.05 provides, was substantially re-written by the Social Security Administration, effective January 17, 2017. *See* 81 FR 66167—12.05, "Intellectual Disorder":

a. This disorder is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.

b. The disorder that we evaluate in this category may be described in the evidence as intellectual disability, intellectual developmental disorder, or historically used terms such as "mental retardation."

c. This category does not include the mental disorders that we evaluate under neurocognitive disorders (12.02), autism spectrum disorder (12.10), or neurodevelopmental disorders (12.11).

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Sanchez, in suggesting that she met Listing 12.05, contends that the Court should look at the listing in effect in 2010 and not 2015 or 2017. However, Sanchez is mistaken as the ALJ in these cases was required to apply the listing in effect at the time. *See Campo v. Berryhill*, No. CV

17-4880, 2017 WL 8785561, at *8 (E.D. La. Dec. 15, 2017), *report and recommendation adopted*, No. CV 17-4880, 2018 WL 1726270 (E.D. La. Apr. 10, 2018).

Applying the current Listing standard, the ALJ found that Sanchez's psychological evaluations were relevant and indicated that she had previously been tested and obtained a formal I.Q. score of 70 on the WECHSLER ADULT INTELLIGENCE SCALE: THIRD EDITION. R. Doc. 9-2. The ALJ held that the test showed that she had a level of functioning at borderline level. *Id.* The ALJ also found that during the 2010 consultative psychological evaluation, she reported that she engaged in self-isolation from social activities and had previously quit her job at Wal-Mart because of her frustration in her inability to understand her employer's instructions. *Id.* The ALJ noted that the examiner acknowledged her prior I.Q. findings but also indicated that Sanchez was able to identify Martin Luther King, Michael Jordan, and President Obama; could discuss types of music she likes; showed fairly adequate short-term and long-term memory function; and could also perform mental calculations with numbers including addition, subtraction, multiplication and division. *Id.* The ALJ noted the examiner indicated, given her knowledge in the areas of vocabulary and verbal reasoning, her range of intellect was only slightly below age expectations. *Id.* The ALJ noted that since January 15, 2010 and December 3, 2010, that there a has been little in the record to suggest any significant changes in the claimant's overall condition. R. Doc. 9-2, Tr. 24.

The ALJ further noted that intermittently, Sanchez had poor concentration but that the vast majority of her mental status evaluations and diagnostic results were largely normal. *Id.* The ALJ concluded that her difficultly with concentration was largely due to her use of medication, and decreased without outside stressors, which helped her to gain greater control over her mental health symptoms. *Id.* The ALJ found that the objective medical evidence, the claimant's daily activities

and the opinion of Dr. Constantin, support the residual functional capacity. *Id.* The ALJ further noted that due to major depressive disorder and borderline intellectual functioning, Sanchez is limited to simple, routine, repetitive concept tasks with only superficial interaction with supervisors, co-workers, and the public, meaning no ongoing public interaction or close coordination with co-workers. *Id.*

"The term 'adaptive behavior' refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood development milestones (*E.g.*, when did the individual first crawl, walk, tie shoes, feed/dress self, *etc.*), as well as educational and social achievements." *Inglet v. Astrue,* No. 6:08–CV–014–C, 2009 WL 2981908, at *10 (N.D. Tex. Sept. 17, 2009) (quoting Social Security Administration, PROGRAMS OPERATIONS MANUAL SYSTEM, http://policy.ssa.gov/poms.nsf/lnx/0424515056). *See* Listing 12.00(C)(1) ("Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."); *Lewis v. Barnhart*, 460 F.Supp.2d 771, 784 n. 6 (S.D. Tex. Sept. 26, 2006) (citing Am. Psychiatric Assoc., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 42 (4th ed. 2000)) ("'Adaptive functioning' is defined as how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in this particular age group, social cultural [sic] background, and community setting.").

The Commissioner seemingly equated her psychological judgment assessment as evidence of the status of her adaptive behavior. However, the record citations of the Commissioner do not

reference any evidence of Sanchez's adaptive behavior. On whole she often displayed normal psychological judgment. R. Doc. 14. Nevertheless, reviewing the ALJ's opinion, the ALJ gave partial weight to the opinion of Dr. Constantin, the state agency psychological consultant who indicated that Sanchez had moderate activities of daily living, social functioning and ability to maintain concentration, persistence or pace. The ALJ noted that Dr. Constantin felt that Sanchez could understand, remember, carryout simple tasks with routine supervision and could adapt appropriately to work situations and could relate to supervisors, peers and customers on a superficial work basis. R. Doc. 9, Tr. 24. The ALJ noted Sanchez's ability to still perform some simple household chores, play games on her phone, as well as use a computer and Facebook. The ALJ noted that she enjoys watching television programming and listening to music, and after incorporating Dr. Constantin's opinion, included modified restrictions as justified by the evidence as a whole. There is no evidence in the record suggesting that Sanchez was markedly limited in adaptive behavior nor does Sanchez point to any evidence in the record otherwise. As such, this Court finds the ALJ's determination regarding Listing Level 12.05 is based upon substantial evidence.

## IV.    **Recommendation**

For the reasons assigned herein, it is **RECOMMENDED** that the ALJ's decision denying Brittany Lynn Sanchez's Supplemental Security Income and Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 9th day of October, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. ' 636(b)(1) was amended to extend the period to fourteen days.